No. 86-440

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

IN THE MATTER OF THE ESTATE OF
MERLE K. FLASTED, Deceased.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Carter,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Huntley & Eakin; Gene Huntley argued for Roberta
Flasted, Baker, Montana

For Respondent:

Peterson, Schofield & Leckie; K. D. Peterson argued
for Everett Flasted, Billings, Montana
Dorsey & Whitney; Richard A. Brekke argued for Estate
and Personal Representative, Billings, Montana

Submitted: June 4, 1987

Decided: August 17, 1987

Filed: AUG 17 1987

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Everette Flasted appeals a Carter County District Court order insofar as that order awards certain assets from the estate of his late brother, Merle Flasted, to Merle's widow, Roberta. Roberta cross-appeals raising four issues. The issues on appeal are: (1) whether the lower court properly ruled that Merle's will's bequest to Roberta of "any cash and savings that I may have at the time of my death" included (a) a $150,000 promissory note and the mortgage securing that note; (b) a diamond ring; (c) the partnership interest in Nuclear Ltd. and shares of corporate stock; (2) whether the court properly ruled that the "cash and savings" clause did not include decedent's patronage and capital credits in certain cooperatives; (3) whether the court erred in refusing to award the homestead allowance and exempt property to Roberta; (4) whether the court erred in denying Roberta's motion for judgment on the pleadings; (5) whether the court erred in relying upon parole evidence in construing an agreement between Everette and Roberta. We affirm.

We set forth only those facts necessary to the resolution of this appeal. In December 1974, Merle Flasted executed the will which gives rise to this dispute. That will provided, in pertinent part:

> [I] give to [my wife, Roberta Flasted,] any cash and savings that I may have at the time of my death. I also give to my wife one hundred head of cows from the herd that I own on my death.
> I also provide that . . . she may stay on the home at the ranch for a period of three (3) years after my death and may keep the . . . one hundred head of cows for that three year period on the ranch . . .

> I give, devise and bequeath to my brother, Everett Flasted, all the rest, residue and remainder of my estate, including but not limited to my ranch and any remaining livestock not previously bequeathed, and machinery.
>
> I hereby nominate and appoint my brother, Everett Flasted, as executor of this my Last Will and Testament . . .

At the time of executing his will, Merle consulted with an attorney who made notes reflecting Merle's testamentary wishes. The District Court summarized those notes as:

> [Merle] did not want the ranch to go to his wife or her family but wanted the ranch to stay in his family and go to his brother. He wanted his wife [and another devisee] to each receive 100 head of cows. All remaining livestock and machinery was to go to Everett.
>
> He stated that 100 cows and savings would take care of his wife. [The attorney's] notes identify the savings as $40-50,000 in a joint account.

In May 1983, Merle died and, upon her discovery of Merle's will, Roberta arranged for she and Everette to meet with Gene Huntley, a Baker, Montana, attorney who had previously represented Merle. The stated purpose of the trip was to "read the will." While traveling to meet with Mr. Huntley, Roberta and Everette discussed the fact that under the will she was to receive 100 cows. Merle did not have 100 cows at the time of his death so Everette suggested that Roberta receive an equivalent value of sheep.

Upon meeting with Mr. Huntley on May 19, 1983, discussions were held relevant to the estate's assets. Mr. Huntley advised Roberta several times that she could contest the will. Ultimately, Mr. Huntley drafted an agreement which both Everette and Roberta signed. The agreement provided in part:

3

> [R]oberta Flasted was devised the cash and savings of the decedent . . . now Roberta Flasted has rights to the property of the estate by reason of being the widow of Merle . . . the parties desire to adjust their rights to reflect what they would believe would be the desires of the decedent. Now, Therefore, it is hereby agreed . . .
> Roberta will receive about 900 head of ewes, . . . the wool crop for the years 1982 and 1983 . . . the right to live in the home on the ranch . . . for the rest of her natural life . . . all of the vehicles belonging to the decedent at the time of his death except the pickup truck which was used for the ranch operation. Everett will receive . . . the rest, residue and remainder of the decedent's estate, except the portion here agreed to go to Roberta . . . In consideration of the foregoing Roberta Flasted gives up all of her rights to claim any share of the decedent's estate other than the cash and savings of the decedent and that part of his estate specified in this agreement. Everett Flasted agrees to give up his claims to any part of the estate herein agreed to be conveyed to Roberta. (Emphasis added.)

Shortly after Merle's death, Roberta received approximately $209,000 from checking accounts, certificates of deposit, savings certificates and stock which she had previously held in joint tenancy with Merle. The District Court appointed Everette personal representative of the estate after his June 1983 application and admitted Merle's will to informal probate. In May 1984, Roberta moved the court to grant her the homestead and family allowances provided for at § 72-2-801, and -803, MCA. In August 1984, the court denied Roberta both the homestead and family allowance on the basis that she had waived the same in the May 1983 agreement. At that time, the court also granted Roberta's motion for

supervised administration of the estate. Roberta moved under Rule 59(g), M.R.Civ.P., for the court to reconsider its denial of the homestead and family allowances. The court took no action on that motion.

In April 1986, the Carter County District Court held a bench trial to resolve the issues relative to the construction of the will and the May 1983 agreement. Roberta again asserted her right to the homestead allowance and, for the first time, claimed exempt property under § 72-2-802, MCA. She did not pursue her claim for the family allowance. The court admitted parol evidence relative to the parties' intent as to the agreement.

In July 1986, the court entered its findings and conclusions ruling that (1) as "cash and savings" under the will and agreement, Roberta would receive a $150,000 promissory note and mortgage, a diamond ring, stock shares and a partnership interest; (2) under that same clause, Roberta would not receive patronage and cooperative credits in Range Telephone, Southeast Electric and Farmer's Cooperative; (3) Roberta could not successfully claim the homestead allowance because she had failed to timely appeal the court's earlier adverse ruling on that issue; (4) under the May 1983 agreement, Roberta waived her rights to the homestead allowance and exempt property; and (5) Roberta would receive a car (but not ranch machinery, a snowmobile or an airplane) under the agreement clause which provided her with all of Merle's vehicles except a pickup. The court relied on parol evidence as a basis for its fifth ruling immediately above. This appeal followed.

The first issue is the court's interpretation of what constitutes "cash and savings" under the agreement and the will. The court found, and we agree, that "the words 'cash and savings' used in the agreement did not alter the will and

5

should be <u>construed in the context of their meaning in the will</u>." (Emphasis added.) This is clearly correct, given the agreement's recitation that the parties desired to adjust their rights to reflect what they believed were the decedent's desires.

Montana statutes relevant to the construction of wills include § 72-11-302, MCA, which provides:

> The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected and that other can be ascertained.

and § 72-11-304, MCA, which provides:

> (1) When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:
>
> (a) where a mistake or imperfection of the writing is put in issue by the pleadings;
>
> (b) where the validity of the agreement is the fact in dispute.
>
> (2) But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in 1-4-102, or to explain an extrinsic ambiguity or to establish illegality or fraud.
>
> (3) The term agreement includes deed and wills, as well as contracts between parties.

We agree with the District Court that the circumstances surrounding the will must be looked at to construe the "cash

6

and savings" clause. The court opted to construe that clause broadly, reasoning that Merle, at the time of the will and in subsequent years, caused money and property to be owned jointly with Roberta. Thus, he clearly intended to amply provide for his wife. The court also cited the attorney's notes which indicated that Merle wanted the ranch to stay in his family. Given those notes, the court construed the residuary clause (which granted Everette the remainder of the estate "including but not limited to my ranch and any livestock and machinery") to include all personal property connected with the ranch. The court concluded that the promissory note should pass to Roberta under the "cash and savings" clause given the broad interpretation of the clause and that the note was not ranch property. We agree with the court's reasoning and affirm its decision on this point. We add that the loan underlying the promissory note was derived principally from certificates of deposit jointly owned by Roberta and Merle. At least before the loan, Merle intended the money now embodied in the promissory note to be Roberta's.

Under the peculiar circumstances of this case, we also affirm the court's decision that the diamond ring, the partnership interest and the corporate shares should pass to Roberta under the "cash and savings" clause. The circumstances indicate that this clause should be construed broadly.

We also agree that the patronage and capital credits in Southeast Electric Cooperative, Range Telephone Cooperative and Farmer's Cooperative, should not pass to Roberta under the "cash and savings" clause. We agree that those were ranch assets connected with the ranch business. The circumstances indicate that Merle intended that ranch assets should pass to Everette.

7

The next issue is whether the court erred in refusing to award the homestead allowance and exempt property to Roberta. We agree with the District Court that Roberta waived her rights (to exempt property and the homestead allowance) through the May agreement which provided:

> [R]oberta has rights to the property of the estate by reason of being the widow of Merle . . . In consideration of the foregoing Roberta Flasted gives up all her rights to claim any share of the decedent's estate other than the cash and savings of the decedent and that part of his estate specified in this agreement.

Neither the homestead allowance nor exempt property were specified by the agreement as going to Roberta. Roberta argues that at the time of the agreement she had no knowledge of the homestead allowance or of exempt property and, therefore, under § 72-2-102, MCA, she could not have waived those rights. That statute provides:

> The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property, and family allowance or any of them may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of "all rights" (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead allowance, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will

8

executed before the waiver or property settlement.

Roberta claims that because there was no fair disclosure she could not waive her rights. We hold that under the peculiar circumstances of this case Roberta did waive the homestead allowance and exempt property. Those circumstances are that (1) the agreement acknowledges that Roberta had rights to the property of the estate by reason of being the widow of Merle Flasted; (2) Mr. Huntley, an able and experienced attorney, was representing Roberta at the time of the agreement; (3) Mr. Huntley drafted the agreement; (4) Everette was not represented by Mr. Huntley or other counsel at the meeting where the agreement was executed; (5) there is no evidence that Everette, a rancher, was aware of the homestead allowance or of exempt property so that he could advise Roberta of her rights. Parenthetically, we note that the court found that Mr. Huntley was representing Roberta at the time of the agreement. Roberta has not raised that finding as an issue on appeal. Moreover, § 28-3-206, MCA, provides that a contractual ambiguity should be interpreted against the party causing the uncertainty, Roberta in this case. We hold that Roberta did waive the rights in question. We need not address whether Roberta properly pursued the appeal of this issue.

The next issue is whether the court erred in denying Roberta's motion for judgment on the pleadings. Roberta moved for judgment on the pleadings part-way through trial, after sixteen stipulations had been read into the record and two witnesses had testified for approximately 140 pages of transcript. Rule 12(c), M.R.Civ.P., provides that a party may move for judgment on the pleadings within such time as not to delay the trial. Given the tardiness of the motion, we uphold the court's denial of the motion.

9

The last issue is whether the court erred in relying upon parol evidence to construe one provision of the May 1983 agreement. That clause provided that Roberta would receive "all of the vehicles belonging to the decedent at the time of his death except the pickup truck. . . ." The court, relying on parol evidence of the parties' intent, held that Roberta would receive a Cadillac car but not ranch vehicles, a snowmobile or an airplane. Section 28-2-905, MCA, provides:

> (1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
>
> (a) when a mistake or imperfection of the writing is put in issue by the pleadings;
>
> (b) when the validity of the agreement is the fact in dispute.
>
> (2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.
>
> (3) The term "agreement", for the purposes of this section, includes deed and wills as well as contracts between parties.

This Court has stated that:

> Ambiguity only exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. (Emphasis added.)

10

Martin v. Community Gas & Oil Co., Inc. (Mont. 1983), 668 P.2d 243, 245, 40 St.Rep. 1385, 1388. We hold that this agreement taken as a whole, is ambiguous. The agreement awards Roberta "all vehicles" (with the exception of a pick-up), which phrase is in itself somewhat ambiguous.

The agreement also states that "the parties desire to adjust their rights to reflect what they would believe would be the desires of the decedent." The decedent's desires, as expressed in the will, were that Everette would receive the decedent's machinery. Therefore, the agreement intends on the one hand that Roberta receive all vehicles with one exception, but on the other hand that Everette would receive the machinery. The District Court properly relied on parol evidence to interpret the ambiguous "all vehicles" clause. Roberta does not argue that there is insufficient evidence to support the court's construction of that clause.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11