No. 99-125

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 189

300 Mont. 409

4 P.3d 1207

IN RE THE MARK K. EGGEBRECHT

IRREVOCABLE TRUST

CARLA EGGEBRECHT, ALYSSA MAY

EGGEBRECHT and TERRY JEAN

EGGEBRECHT,

Petitioners and Respondents,

v.

PAULINE EGGEBRECHT and

HOWARD EGGEBRECHT,

Respondents and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

For Respondents:

Timothy A. Filz, Brown Law Firm, Billings, Montana (Carla Eggebrecht)

Damon L. Gannett, Gannett Law Firm, Billings, Montana (Terry Eggebrecht)

Submitted on Briefs: February 4, 2000

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶The Respondent, Carla Eggebrecht, filed a petition for modification of the Mark K. Eggebrecht Irrevocable Trust in the District Court for the Thirteenth Judicial District in Yellowstone County. Carla sought to modify specific provisions of the trust in order to allow a corporate trustee to be appointed as the sole trustee upon her resignation as a joint trustee. The Appellants, Pauline and Howard Eggebrecht, joint trustee and trust advisor for the trust, respectively, opposed the modifications proposed by Carla. The District Court granted the petition for modification of the trust in order to allow Norwest Trust to be appointed as the corporate successor trustee for the trust. Pauline and Howard appeal the District Court's judgment. We affirm the judgment of the District Court.

2. ¶The sole issue presented on appeal is whether the District Court erred when it granted the petition to modify the trust.

## FACTUAL BACKGROUND

1. ¶In March 1988, Mark K. Eggebrecht died and was survived by his wife, Carla, and their two young daughters, Alyssa and Terry. Mark was also survived by his parents, Howard and Pauline Eggebrecht. Carla was appointed the personal representative of Mark's intestate estate. However, shortly after Mark's death, Howard and Pauline sought to have a will, executed ten years prior to Mark's marriage to Carla, admitted to probate. The will left everything to Mark's brother and sisters and purported to disinherit any future spouse. Howard and Pauline additionally filed several creditor's claims against the estate.

2. ¶Following extensive litigation, Carla, Howard, and Pauline agreed on a stipulation and settlement which was adopted by the District Court on September 4, 1992. As part of the settlement the parties agreed, among other things, to create a trust, known

as the Mark K. Eggebrecht Irrevocable Trust. The beneficiaries of the trust were Mark's daughters, Alyssa and Terry. Carla and Pauline were named as joint trustees, and Carla, Pauline, and Howard were appointed as trust advisors.

3. ¶The purposes of the trust, as set forth in the trust itself, are the following:

(a) to secure to the children [Alyssa and Terry] the benefit of the investment-management services of the Trustee;

(b) to provide for the children the financial security and standard of living of the children lost by the death of Mark. K. Eggebrecht, said financial security to include, but is not limited to, providing sufficient funds for post-secondary, graduate and professional education, and to further and fulfill the obligations and privileges of parental support of Mark K. Eggebrecht for food, shelter, medical needs, and personal development.

1. ¶The Trust provides for the following powers of the trust advisors:

D. Each Trust Advisor shall have the authority to direct the Trustee with respect to subject matters where acting pursuant to individual authority, or where acting in unanimity with other Trust Advisors who have authority with respect to the same subject matter. The Trustee shall comply with such Trust Advisor's direction . . . .

The trust provides the following duties for Howard in his role as trust advisor:

A. E. Howard Eggebrecht of Billings, Montana, shall serve as Trust Advisor with respect to the Trust's mineral rights and Wendy's and Taco Bell properties during his lifetime. . . . For all trust assets with respect to which he is Trust Advisor, E. Howard Eggebrecht shall retain the power to control, manage, lease, and operate such assets, in combination with other interests held by him or members of the Eggebrecht family.

The Trust also provides the following powers for Carla and Pauline, as trust advisors:

"[Pauline Eggebrecht and Carla Eggebrecht] shall be Trust Advisor[s] with respect to investments (except mineral rights, Taco Bell and Wendy's properties), and change of corporate trustee."

1. ¶The trust additionally sets forth the duties of Carla and Pauline as the joint trustees:

Carla J. Eggebrecht and M. Pauline Eggebrecht (hereinafter "Joint Trustee(s)") shall be the Trustee of the Mark Eggebrecht Irrevocable Trust, and shall exercise all powers of the Trustee jointly. All instruments required to be executed by the Trustee shall be executed jointly. Neither Joint Trustee shall have the power to act for the Trust without the express written consent of the other.

. . . .

The joint Trustees shall use their best good faith efforts to arrive at mutually acceptable agreements regarding trust affairs, including disagreements over matters of substance, and shall communicate with one another regarding trust decisions at least annually.

1. ¶The trust also contemplated the resignation of a joint trustee:

Each joint Trustee shall have the right to resign as joint Trustee. In the event of resignation, or in the event either joint Trustee named herein dies, declines, ceases, or is otherwise unable to serve as Trustee, the successor Corporate Trustee named herein shall become the sole Trustee of the Trust.

1. ¶Currently, the trust corpus includes bonds, mineral interests, and a one-eighth interest in two commercial real estate parcels in Billings, Montana, known as the Wendy's and Taco Bell properties. Originally, the Eggebrecht family farm was held by the trust in order to allow completion of a CRP contract. However, pursuant to an option agreement which was part of the original stipulation and settlement, following completion of the CRP contract, the farm was transferred to Howard and

Pauline in exchange for the one-eighth interest in the Taco Bell and Wendy's properties.

2. ¶Following the creation of the trust in 1993, there were no requests by Carla for any distributions from the trust until 1996. In 1996, Alyssa experienced some emotional and medical problems and was treated at a special school for girls in Utah. On January 8, 1996, Carla wrote a letter to Pauline and requested a distribution from the trust in order to cover three-months' tuition for Alyssa:

My health insurance will cover through this January of 1996. I have one month of health account funds to cover February tuition. I am working on VA benefits to see if I can get coverage through their provision for residential treatment. I would like to be able to have a distribution from the trust to cover her stay at Cross Creek Manor from March through May. I am asking you to please consider allowing this distribution for Alyssa. She has truly benefitted from this program and has finally found some joy in being who she is.

1. ¶Pauline wrote the following response on February 16, 1996:

As you can plainly see, we cannot get into situations like this. We have little money and many years to take care of her financial needs. We have to be very careful as to how we use this money or we will find ourselves without any means to take care of these needs. This would be very poor judgement on our part and very careless in distributing her money. . . . As you may conclude, I will not agree to taking this money out of the trust.

1. ¶Subsequently, Carla wrote Pauline requesting a distribution from the trust for specific items for the girls, including dental care, chiropractic services, driver's education training, car insurance and SAT test preparation. Pauline denied this request as well, with the following response:

As for her [Alyssa's] other requests, drivers training, $315.00, dental $274.13, insurance on the car, $730.90 and SAT, $240.00, these are common expenses incurred by all families . . . . The expenses for Terry, $315.00 for drivers training and $615.00 for Chiropractic services are also expenses incurred by a family. You will from time to time have a balance owing on a medical bill.

1. ¶Following the denial of all of her requested distributions from the trust, Carla's attorney at that time, Gilbert Burdett, contacted TrustCorp, the named corporate successor trustee in the trust document, to determine whether it would accept appointment as trustee. TrustCorp responded by letter stating that it would only serve as trustee if certain modifications were made to the trust, including the elimination of the trust advisor roles.

2. ¶Carla's present attorney, Timothy Fils, then contacted Norwest Investment Management to determine whether Norwest would serve as the corporate trustee. Fils received a response similar to TrustCorp's, which stated that Norwest would only serve as the corporate trustee if certain modifications were made to the trust, including elimination of the trust advisor role.

3. ¶On April 14, 1998, Carla filed a petition to modify the trust, in which she stated her intention to resign as a joint trustee. Carla attached a modified version of the trust and asserted that the requested modifications were necessary conditions to substitution of a corporate trustee. Additionally, Carla asserted that the cotrustees, Carla and Pauline, were not able to efficiently manage the trust due to conflict between them.

4. ¶Alyssa reached the age of majority several weeks after Carla filed the petition for modification, and at that time Alyssa joined in Carla's petition for modification. Additionally, the District Court appointed Damon Gannet to act as Terry's guardian ad litem in these proceedings.

5. ¶Following a hearing on August 6, 1998, to consider the petition for modification, the District Court entered its findings of fact, conclusions of law, and judgment authorizing all of the requested modifications to the trust. The District Court additionally awarded attorney's fees to Carla and to Damon Gannett, the guardian ad litem appointed to represent Terry. Howard and Pauline now appeal the judgment of the District Court.

## STANDARD OF REVIEW

1. ¶We review a district court's findings of fact to determine whether they are clearly erroneous. *See In re Estate of Bolinger* 1998 MT 303, ¶ 29, 292 Mont. 97, ¶ 29, 971 P.2d 767, ¶ 29. We review a district court's conclusions of law to determine whether its interpretation is correct. *In re Estate of Bolinger*, ¶ 29.

## DISCUSSION

1. ¶ Did the District Court err when it granted the Petition to Modify the Trust?
2. ¶The Appellants, Pauline and Howard, assert that the District Court erred when it granted the petition for modification because the trust was the result of a formal stipulation and written settlement which is binding on all the parties and, therefore, precluded modification of the trust. Additionally, Pauline and Howard contend that the District Court erred because Carla's statement of her intent to resign as joint trustee did not legally justify appointment of a successor trustee.

1. ¶In response, Carla asserts that the District Court was correct when it concluded that the modification of the trust was governed by Montana trust law, and not the law governing settlement modification. Additionally, Carla contends that the District Court properly granted the petition for modification based on her expressed intent to resign, and that her resignation prior to the filing of the petition was unnecessary and would have required that she leave Pauline as the sole trustee because no corporate trustee would accept such an appointment without the proposed modifications.
2. ¶With respect to Pauline and Howard's first argument, the District Court concluded that, although the trust was part of a binding stipulation and settlement agreement, the trust itself was governed by Montana trust law, including 72-33-101, et seq., MCA, known as the Montana Trust Code. The District Court concluded the following:

Montana law provides that beneficiaries of an irrevocable trust may compel modification of the trust, unless the court finds that modification would frustrate a material purpose of the trust and the reasons for modification are outweighed by such material purpose.

1. ¶Section 72-33-406, MCA, states, in relevant part:

(1) Except as provided in subsection (2), if all beneficiaries of an irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court.

(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the trust cannot be modified or terminated unless the court, in its discretion, determines

that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust.

1. ¶In its findings of fact, the District Court found the following:

It was stipulated by the parties that Alyssa Eggebrecht would have testified that she consents to the changes to the Trust in order to allow Norwest to assume the duties of successor trustee.

Damon Gannett, Esquire, was appointed by this Court to represent the interests of Terry Eggebrecht, a minor. Mr. Gannett has, on Terry Eggebrecht's behalf, consented to the changes to the Trust in order for Norwest to assume the duties of successor trustee.

1. ¶The District Court further found and concluded:

Pauline Eggebrecht and Howard Eggebrecht assert that since the Trust was created as part of a global settlement of the Mark Eggebrecht Estate litigation, protection of Pauline Eggebrecht's and Howard Eggebrecht's positions as trust advisors is a material purpose. While protection of such positions may be deserving of some protection, this Court finds that protection of these positions is not a material purpose.

Even if protection of the trust advisor positions were considered to be a material purpose, the Court finds that there is an equally important purpose - namely, the ability of a co-trustee to resign and have a corporate trustee assume the duties of successor trustee. Since these two purposes are irreconcilable, this Court cannot conclude that it is necessary to deny the request of the beneficiaries to compel modification based on the elevation of one of these two purposes over the other.

1. ¶This District Court's findings are supported by substantial evidence and are not challenged on appeal. The express purpose of the trust is to provide for the

maintenance and support of Alyssa and Terry, the beneficiaries. To the extent that the trust advisor positions held by Pauline, Howard, and Carla, are a material purpose of the trust, so is the right of a joint trustee to resign and have a corporate trustee assume the role as sole trustee. In this case, because these two purposes are irreconcilable, the District Court properly exercised its discretion when it decided that the reasons for modifying the trust to allow a corporate trustee to be appointed as the sole trustee, outweigh the material purpose of having a trust advisor position.

2. ¶The record reveals, and the District Court's findings of fact reflect, the difficulties that Carla and Pauline, the joint trustees, had experienced in communicating and agreeing on any distributions of the trust. We conclude from the District Court's findings that the true material purpose of the trust was to benefit Alyssa and Terry by giving them support and maintenance following the loss of their father. This purpose was frustrated as a result of the joint trustees' inability to work together, and the beneficiaries believed that the solution to this problem was to have a corporate trustee administer the trust. In order to do so, the District Court properly modified the trust, eliminating the trust advisor position, and appointing Norwest to act as the sole trustee.

3. ¶With respect to Pauline and Howard's second argument, regarding Carla's resignation, § 72-33-616, MCA, provides, in relevant part, as follows:

(1) A trustee who has accepted the trust may resign only by one of the following methods:

(a) as provided in the trust instrument . . . .

The trust explicitly provides that a joint trustee may resign, and that a corporate successor trustee will be appointed as the sole trustee. In this case, Carla had given notice of her intent to resign following the District Court's resolution of whether or not the trust could be modified in order to allow a corporate successor trustee to be appointed as contemplated by the trust.

1. ¶Contrary to Pauline and Howard's assertion, there was no requirement that Carla resign prior to the District Court decision to allow the requested modifications. Rather, the sole purpose of this proceeding was to modify the trust so that a corporate trustee could then be appointed to better serve the purposes for which the trust exists.

2. ¶Accordingly, we conclude that the District Court did not err when it granted the

petition for modification. Therefore, we affirm the judgment of the District Court.


/S/ TERRY N. TRIEWEILER


We Concur:


/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.