No. 00-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 277

IN THE MATTER OF THE ESTATE OF
MILDRED I. BERTHOT, Deceased.

ELLEN M. COLLINS and JOANN BARRETT,

Petitioners and Appellants,

v.

NORWEST INVESTMENT MANAGEMENT
and TRUST,

Respondent and Respondent.

FILED

DEC 5 2002

CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Mike Salvagni, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        John Frohnmayer, Bozeman, Montana

        For Respondent:

        Allan Baris, Cindy Younkin, Moore, O'Connell & Refling, Bozeman,
        Montana


                                        Submitted on Briefs: August 8, 2002

                                        Decided: December 5, 2002

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellants Ellen M. Collins and Joann Barrett appeal an order of the District Court for the Eighteenth Judicial District, Gallatin County, denying their petition to remove Norwest Investment Management and Trust (Norwest) as trustee of their grandmother's testamentary trust and to appoint a new trustee. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

¶2 Appellants presented two issues on appeal which we have restated for clarity as follows:

¶3 1. Whether the District Court had discretion to deny Appellants' request to remove Norwest, the institutional trustee of this testamentary trust, and appoint an individual trustee.

¶4 2. Whether the District Court erred in awarding Norwest its attorney's fees and expenses in defending this action in the trial court.

¶5 In addition, Norwest presented the following two issues on cross-appeal:

¶6 3. Whether the District Court erred in failing to allow Norwest to recover all of its attorney's fees and expenses incurred in preparing the Twenty-Ninth Accounting.

¶7 4. Whether Norwest is entitled to reimbursement from the trust for its attorney's fees and other expenses of this appeal.

### Factual and Procedural Background

¶8 Appellants are the beneficiaries of a testamentary trust established by the will of their grandmother, Mildred I. Berthot. Berthot executed her will on April 6, 1953. Under the terms of the will, all of her estate, with the exception of her jewelry, household goods and

2

personal belongings, was bequeathed to Security Bank and Trust Company of Bozeman as trustee. Security Bank and Trust was founded by Berthot's late husband.

¶9 The trust went into effect when Berthot's will was admitted to probate and subsequently settled on May 14, 1962. The initial income beneficiary of the trust was Bernice B. Klingensmith, Berthot's daughter and Appellants' mother. When Klingensmith died in 1994, Appellants became the income beneficiaries entitling them to receive the net income from the trust during their lifetime. Upon the death of whichever Appellant dies last, the trust will terminate and the principal will be distributed equally among Appellants' six children.

¶10 By order dated September 26, 1966, the District Court confirmed Norwest as successor trustee to Security Bank and Trust Company. When Norwest became the trustee in 1966, the trust held assets valued at $166,757 of which $118,834 consisted of stock in several corporations; $28,661 was a real estate contract from the sale of farm land; $17,072 was a mortgage for the sale of city lots; $400 was in an escrow account; and $1,790 was in cash. Thus, of the original portfolio, 71% was in stock and 29% was in income producing assets. In 1966, the trust had income of $4,720 annually. As of the end of 1998, the value of the trust assets was $1,393,058 with income of $28,487 annually.

¶11 In administering the trust, Norwest has made monthly payments of income to Appellants and has provided Appellants annually with both fiscal year itemized statements

and calendar year itemized statements. These statements itemize receipts and disbursements of the trust and describe the current assets and asset values of the trust.

¶12 After Klingensmith's death, Appellants sent Norwest two letters in which they asked several questions concerning Norwest's management of the trust, requested information concerning past performance of the trust, and requested details of a particular bond fund in which part of the trust assets were invested. Norwest duly responded to both letters, but heard nothing more from Appellants until Norwest filed its "Petition for Settlement of its Twenty-Ninth Account of Successor Trustee" on June 4, 1998. This Twenty-Ninth Accounting covered the two-year period from October 1, 1995, to September 30, 1997, and claimed trustee fees for that period of $16,403.68 and attorney's fees of $1,800.

¶13 On July 29, 1998, Appellants filed an objection to the accounting requesting that the District Court postpone its ruling to allow Appellants time to gather information to support a petition. Based on this objection, the court postponed a hearing on the Twenty-Ninth Accounting.

¶14 On May 20, 1999, Appellants filed their "Verified Petition to Remove Trustee and Appoint New Trustee," in which they sought the replacement of Norwest and the appointment of Edwin G. Davis, a family friend, as trustee. Appellants alleged in their petition that they are dissatisfied because Norwest allowed the trust to become heavily invested in equities which do not produce maximum income for the beneficiaries and, instead, generate excessive fees for Norwest. Besides Appellants (the income beneficiaries),

the petition was verified by five of the six residual beneficiaries. The sixth residual beneficiary stated that she chose to "remain neutral."

¶15 A hearing in this matter was held on July 2, 1999, at which time the parties appeared and presented witnesses and exhibits. On February 1, 2000, the District Court issued its Findings of Fact, Conclusions of Law and Order wherein it concluded that Appellants failed to establish that Norwest should be removed as trustee and that the individual proposed by Appellants as a substitute trustee was not qualified. The court also approved Norwest's Twenty-Ninth Accounting, including the trustee fees, but denied awarding Norwest its attorney's fees in preparing the Twenty-Ninth Accounting and in defending this action.

¶16 Appellants filed their notice of appeal in the District Court on February 29, 2000, arguing that the District Court erred in not removing Norwest as trustee and in approving the Twenty-Ninth Accounting. Norwest filed its notice of cross-appeal on March 13, 2000, arguing that the District Court erred in failing to award Norwest its attorney's fees and expenses in this litigation. While Norwest contended in its notice of cross-appeal that Appellant's notice of appeal was untimely because a judgment in this matter had not yet been entered, Norwest filed its notice in the event that it was ultimately determined that Appellants' notice was timely.

¶17 Meanwhile, on March 7, 2000, Norwest filed a motion in the District Court requesting that the court amend its order regarding reimbursement for attorney's fees and expenses in defending this action arguing that Norwest is entitled by law to reimbursement from the trust.

In its motion, Norwest also sought clarification of the court's order regarding reimbursement for attorney's fees and costs in preparing the Twenty-Ninth Accounting. Appellants objected to Norwest's motion arguing that once the appeal had been filed, the District Court lost jurisdiction to consider Norwest's motion.

¶18 On April 21, 2000, the District Court issued a Memorandum and Order concluding that it did have jurisdiction to consider Norwest's motion because the motion was timely under Rule 52(b), M.R.Civ.P., and as such, pursuant to Rule 5, M.R.App.P., the notice of appeal would be treated as being filed after the District Court's order. In addition, the District Court denied Norwest's request to modify its previous order regarding attorney's fees and costs for preparing the Twenty-Ninth Accounting. The court did, however, determine that although Norwest was not entitled to collect attorney's fees from Appellants, it was entitled to be reimbursed by the trust for its attorney's fees and costs in defending this action. Consequently, the court amended its previous order to that affect and stated that the amount of those attorney's fees and costs would be determined at a subsequent hearing.

¶19 On June 5, 2000, Norwest filed a motion with this Court requesting that we remand the case to the District Court for a determination of the amount of attorney's fees and costs Norwest incurred in defending this action. Hence, by order of this Court dated June 27, 2000, the case was remanded and, on September 18, 2000, the District Court entered an order approving an award of attorney's fees to Norwest from the trust in the amount of $10,463.

¶20 Thereafter, Appellants filed a supplemental notice of appeal and a motion to file a supplemental brief since their original brief on appeal was filed prior to the District Court's order approving attorney's fees. On October 18, 2000, this Court granted Appellants' motion. Appellants filed their supplemental brief on November 8, 2000, in which they argued that the District Court erred in awarding attorney's fees to Norwest. Norwest duly filed its brief on appeal, including therein its arguments on cross-appeal, and Appellants replied. Norwest declined to file a reply brief on its cross-appeal issue and this case was finally submitted for review to this Court.

## Standard of Review

¶21 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Eggebrecht*, 2000 MT 189, ¶ 18, 300 Mont. 409, ¶ 18, 4 P.3d 1207, ¶ 18 (citing *In re Estate of Bolinger*, 1998 MT 303, ¶ 29, 292 Mont. 97, ¶ 29, 971 P.2d 767, ¶ 29). We review a district court's conclusions of law to determine whether that court's interpretation of the law is correct. *Eggebrecht*, ¶ 18.

## Issue 1.

¶22 *Whether the District Court had discretion to deny Appellants' request to remove Norwest, the institutional trustee of this testamentary trust, and appoint an individual trustee.*

¶23 Appellants contend that the District Court erred in failing to remove Norwest as trustee of the Berthot Trust because Norwest failed to heed the purpose of the trust to provide income for the beneficiaries; failed to heed its own guidelines on maintaining income producing instruments; and maximized its own fees at the beneficiaries' expense. Appellants

also contend that the court improperly applied the law by focusing on Norwest's entitlement to hold its position instead of focusing on the best interests of the beneficiaries.

¶24 Norwest argues, on the other hand, that it has acted within the powers granted to it as trustee under both the will and applicable Montana law, and that Norwest has achieved excellent results for both the income beneficiaries and the remainder beneficiaries. Norwest maintains that there is no evidence in the record of any misconduct by Norwest or anything else to justify overruling the District Court's exercise of discretion.

¶25 Section 72-33-618(2), MCA, provides the following grounds for removal of a trustee by the court:

(a) if the trustee has committed a breach of the trust;
(b) if the trustee is insolvent or otherwise unfit to administer the trust;
(c) if hostility or lack of cooperation among cotrustees impairs the administration of the trust;
(d) if the trustee fails or declines to act; or
(e) for other good cause.

In addition, § 72-33-618(3), MCA, provides:

If it appears to the court that trust property or the interests of a beneficiary may suffer loss or injury pending a decision on a petition for removal of a trustee and any appellate review, the court may, on its own motion or on petition of a cotrustee or beneficiary, compel the trustee whose removal is sought to surrender trust property to a cotrustee or to a receiver or temporary trustee. The court may also suspend the powers of the trustee to the extent the court considers necessary.

¶26 Appellants contend that four of the statutory grounds for removal of a trustee exist in this case. First, they argue that subsection (a) of § 72-33-618(2), MCA, exists here because Norwest has breached the trust by failing to follow the purposes of the trust, which they

claim is to provide income to the beneficiaries. Appellants argue that they are receiving poor service from Norwest because Norwest is managing the trust to maximize its fees. Although the trust assets have grown to nearly $1.4 million, Appellants each receive only $13,000 in income from the trust each year, while Norwest receives more than $8,000 in fees each year.

¶27 Second, Appellants argue that subsection (c) of § 72-33-618(2), MCA, exists here because hostility and lack of cooperation between the trustee and the beneficiaries impairs the trust. Appellants rely on *May v. May* (1897), 167 U.S. 310, 17 S.Ct. 824, 42 L.Ed. 179, for the proposition that the rule set forth in *May* governing removal of a trustee because of hostility or lack of cooperation among co-trustees applies equally to those conditions between trustee and beneficiary and, thus, that rule is applicable to this case.

¶28 In *May*, the testator devised and bequeathed all of his estate to his wife and his six children. In a codicil dated one year after the will, testator appointed his son William as co-trustee along with testator's wife. In the year and a half after testator's death, testator's wife, along with the other five children, attempted to have William removed as co-trustee and another individual appointed in his place, because William was "untrustworthy, dishonest, dictatorial, and disagreeable in manner, and incompetent as a business man." *May*, 167 U.S. at 317-18, 17 S.Ct. at 827. The United States Supreme Court determined in *May* that a clause in the codicil gave testator's other heirs power to remove William as co-trustee by unanimous vote without having to resort to a court of equity. *May*, 167 U.S. at 320, 17 S.Ct. at 827-28.

Thus, Appellants in this case argue that they have the power to remove Norwest as trustee because of hostility between Appellants and Norwest.

¶29 Third, Appellants argue that subsection (d) of § 72-33-618(2), MCA, exists here because the evidence is undisputed that Norwest, knowing of the beneficiaries' desire for more income, refused to act and was hostile, rude and defensive.

¶30 Fourth, Appellants argue that good cause under subsection (e) of § 72-33-618(2), MCA, exists here because Norwest has violated its duty of loyalty by maximizing its fees at the expense of the beneficiaries. At the end of 1998, the trust contained 87% equities rather than the 70% Norwest claimed as its investment objective. Since Norwest bases its fee on the total market value of the portfolio, the growth in equities, while reducing or holding steady the income of the beneficiaries, yields a higher income for Norwest. Appellants contend this creates a conflict of interest for Norwest and good cause for removing Norwest as trustee.

¶31 Norwest argues, on the other hand, that Appellants' assertions about the trust are mistaken in several key respects. First, Norwest contends that the will does not permit the trustee to liquidate principal assets and distribute them to income beneficiaries except in very limited circumstances that do not exist in this case.

¶32 Second, Norwest contends that the will does not establish a goal of maximum income to the income beneficiaries. Instead, it establishes a split interest trust providing for the

payment of net income to the income beneficiaries and the preservation and appreciation of the principal assets for ultimate distribution to the remainder beneficiaries.

¶33 Third, Norwest contends that the will does not provide the beneficiaries the right to control or consult on the investment strategy for the trust. Rather, Norwest contends that the will gives the trustee full discretion to make investment decisions.

¶34 Finally, Norwest contends that *May* is distinguishable from the facts in this case because the trust document in *May* gave the beneficiaries the power to remove the trustee by a unanimous vote. Norwest argues that that is not the case here.

¶35 As Norwest points out in its brief on appeal, it is a basic principle of trust law that a trust is to be managed to carry out the testator's intent. *In re Estate of Lindgren* (1994), 268 Mont. 96, 100, 885 P.2d 1280, 1282. Therefore, the threshold inquiry in any trust case is to examine the terms of the trust document. *In re George Trust* (1992), 253 Mont. 341, 344, 834 P.2d 1378, 1380.

> The intention of the testator should control the disposition and the intent shall "be found from all parts of the will . . . construed in relation to each other . . . to form one consistent whole."

*George*, 253 Mont. at 344, 834 P.2d at 1380 (citations omitted).

¶36 Paragraphs (a)(1) through (a)(12) of the will establish the trustee's power to deal with trust assets. For example, paragraph (a)(4) provides that the trustee has the authority

> [t]o sell, convey, lease, pledge, mortgage, transfer, exchange, or grant options upon any part or parts of the property of the trust estate, for such amounts, and upon such terms, and in such manner, as to the trustee shall seem *for the best*

11

*interests of the trust estate*, without an order of court therefor, and with or without notice; . . . [Emphasis added.]

However, nothing in paragraphs (a)(1) through (a)(12) give the trustee the power to distribute trust assets other than net income to the income beneficiaries.

¶37    Paragraphs (b)(1) through (b)(8) of the will describe certain ancillary powers of the trustee and provide for the trustee's compensation. More specifically, paragraph (b)(2) provides that the trustee has the right to fair and just compensation from the trust estate, and paragraphs (b)(3) and (b)(4) give the trustee the authority to employ agents and attorneys and allow the trustee to be reimbursed for all such reasonable expenses incurred. To that end the District Court concluded that Norwest's fees are consistent with the fees generally charged by professional corporate fiduciaries.

¶38    Paragraphs (c)(1) through (c)(13) describe the purposes of the will and give directions to the trustee for the distribution of income to the various beneficiaries. The only provision in the will allowing for the invasion of trust principal to be paid to a beneficiary is contained in paragraph (c)(3), which states in pertinent part:

> During the minority or other disability of any beneficiary of the trust, to whom payments of income or payments of principal in the discretion of the trustee are to be made, the trustee may make such payments . . . . For the purpose of this paragraph, a beneficiary shall be deemed to be under disability if under a legal disability declared or adjudicated by a court of competent jurisdiction, or if incapacitated to such an extent as in the opinion of the trustee shall make it impossible or impractical for such beneficiary to give prompt and intelligent consideration to business matters. The trustee may accept and act upon such evidence of disability, incapacity, or incompetency of any beneficiary as the trustee may deem appropriate and reliable.

12

All of the beneficiaries in this case are above the age of majority and Appellants do not claim to be disabled, incapacitated or incompetent.

¶39 The most telling provision of the will, as far as this action is concerned, is paragraph (c)(6) which gives the trustee the sole discretion to decide whether to place the assets into income producing property:

> And the trustee shall have full power and authority to invest and reinvest the principal in any kind of property whether such property is actually producing income or not.

Moreover, throughout the will, the testator consistently instructs the trustee to act in "the best interests of *the trust estate*" rather than in the best interests of the income beneficiaries. These provisions belie Appellants' contention that the primary purpose of the trust is to provide maximum income to the income beneficiaries.

¶40 Furthermore, as Norwest points out, the trust terminates on the death of both Appellants even if their mother, Klingensmith, were still alive. Consequently, this provision also contradicts Appellants' argument that the purpose of the trust is to provide maximum income to the income beneficiaries for if both Appellants died prior to the death of Klingensmith, not only would Appellants not receive income from the trust, but Klingensmith would also stop receiving income from the trust regardless of her economic position at the time of Appellants' deaths.

¶41 In short, we agree with Norwest that under the terms of the will and under the provisions of § 72-33-618(2), MCA, there is no justification for removing Norwest as trustee.

13

We also agree with Norwest that Appellants' dissatisfaction with the performance of the trust under Norwest's trusteeship is not justified in light of the trust's performance. The District Court correctly found that over the course of Norwest's tenure as trustee through the end of 1998, the principal assets of the trust have increased 835% and the income has increased 604%.

¶42 Accordingly, we hold that the District Court's findings of fact and conclusions of law are both supported by substantial evidence and are legally correct.

¶43 That said, the dissents have raised several contentions that deserve a response. First, Justice Cotter argues in her dissent that since the beneficiaries were "virtually unanimous" in their request to modify the trust, § 72-33-406, MCA, justifies removal of Norwest as trustee. However, § 72-33-406, MCA, does not allow modification or termination of a trust unless there is *unanimous* agreement among the beneficiaries, not *virtually unanimous* agreement as Justice Cotter contends.

> **Modification or termination of irrevocable trust by *all* beneficiaries.** (1) Except as provided in subsection (2), if *all* beneficiaries of an irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court.

Section 72-33-406(1), MCA (emphasis added). The word "all" is defined as "the whole of; *every* member of." *Webster's New American Dictionary* 14 (1995) (emphasis added).

¶44 Second, while Justice Cotter is correct that the sixth residual beneficiary, Leslie Barrett, chose to "remain neutral," Barrett's failure to disagree is not an indication that she agrees with removal of Norwest as trustee. The dictionary defines the word "neutral" as "not

favoring *either* side in a quarrel, contest, or war." *Webster's New American Dictionary* 349 (1995) (emphasis added).

¶45 Furthermore, in her letter expressing her desire to remain neutral, Barrett stated that she was not knowledgeable in the area of trusts and that she felt "it should be left to the actual Beneficiaries as well as someone with an acute business acumen and experience to handle such issues." Justice Cotter claims that this statement "leaves the clear indication that [Barrett] would defer to the actual beneficiaries . . . as to the propriety of removing the trustee in favor of a successor trustee." However, if that were the case, then why didn't Barrett go ahead and "defer" to the income beneficiaries' wishes and agree to the removal of Norwest as trustee? Contrary to Justice Cotter's interpretation of Barrett's statement, "the clear indication" is that Barrett wants the trust left as is until someone with "an acute business acumen and experience" advises otherwise.

¶46 Third, while Justice Cotter urges the application of § 72-33-406(1), MCA, in this situation, she fails to recognize that § 72-33-406(2), MCA, prohibits modification or termination of the trust--even if all of the beneficiaries agree-- "[*i*]*f the continuance of the trust is necessary to carry out a material purpose of the trust. . . .*" Similarly, § 72-33-407(2), MCA, provides:

> If any beneficiary does not consent to the modification or termination of the trust, upon petition to the court, the other beneficiaries, with the consent of the trustor, may compel a modification or a partial termination of the trust *if the interests of the beneficiaries who do not consent are not substantially impaired.* [Emphasis added.]

¶47 As we noted previously in this majority Opinion, the purpose of the trust is not to provide income for the income beneficiaries, but rather, to preserve trust assets for later distribution to the residual beneficiaries. Removal of Norwest as trustee and modification of the trust to provide more income to the income beneficiaries and, consequently, less assets for the eventual distribution to the residual beneficiaries, would substantially impair the interests of the residual beneficiaries.

¶48 Fourth, Justice Cotter faults the majority for placing the interests of the trustee ahead of the interests of the beneficiaries. On the contrary, we are simply following the basic principle of trust law that a trust is to be managed to carry out *the testator's* intent, not the intent of the trustee or even of the beneficiaries. *See Lindgren*, 268 Mont. at 100, 885 P.2d at 1282; *George*, 253 Mont. at 344, 834 P.2d at 1380.

¶49 Fifth, in his dissent, Justice Trieweiler takes issue with the majority's determination that the purpose of the trust is to preserve trust assets for later distribution to the residual beneficiaries rather than to provide income for the income beneficiaries. He argues that it would have been unnatural for Mildred to be more concerned about the amount of the residual estate left to her yet unborn great grandchildren than the three descendants who were specifically mentioned as income beneficiaries of her trust and that Mildred's primary reason for establishing the trust was to benefit her three named descendants.

¶50 On the contrary, if that were the case, then why didn't Mildred make her grandchildren the residual beneficiaries, rather than the income beneficiaries, and distribute the remainder

of her estate to them after her daughter passed away and after the grandchildren reached an appropriate age? Why keep her grandchildren locked into receiving only the income from the trust? While both the majority and the dissent can speculate all day as to Mildred's reasons for setting up the trust in the way she did, the simple fact is that no one knows why. We can only go by the wording of the trust document itself and in that document Mildred consistently instructs the trustee to act in "the best interests of *the trust estate*" rather than in the best interests of the income beneficiaries.

¶51 Sixth, Justice Trieweiler uses various mathematical comparisons in his dissent to illustrate his point that Norwest's fees have steadily increased. While we do not dispute that Norwest's fees have increased along with the value of the trust itself, it is important to point out that the District Court concluded, and Appellants did not dispute, that Norwest's fees are consistent with the fees generally charged by professional corporate fiduciaries.

¶52 Finally, both Justices Cotter and Trieweiler assert that, rather than depleting trust resources to defend its position, Norwest should have granted the beneficiaries' request that it resign. They fail to note, however, that Norwest has simply followed the terms of the trust document and that it is because of Norwest's capable management of the trust that both the assets and the income of the trust have substantially increased over the years.

### Issue 2.

¶53 *Whether the District Court erred in awarding Norwest its attorney's fees and expenses in defending this action in the trial court.*

¶54 On September 18, 2000, the District Court entered an order approving an award of $10,463 in attorney's fees and costs to Norwest for defending this action. In addition, the court determined that that amount should be paid by the trust, rather than by Appellants.

¶55 We have repeatedly stated that absent a contractual agreement or statutory provision, the prevailing party in a civil action is not entitled to recover attorney's fees. *In re Estate of Dern Family Trust* (1996), 279 Mont. 138, 154, 928 P.2d 123, 133 (citing *Thompkins v. Fuller* (1983), 205 Mont. 168, 186, 667 P.2d 944, 954). This case, however, is one in which both contractual and statutory provisions govern the awarding of attorney's fees and costs.

¶56 Appellants argue on appeal that the award of attorney's fees to Norwest should be vacated because it is not reasonable given that Norwest "breached the Trust, ignored the Trust's purposes, and managed the Trust for its own financial benefit." As Appellants note in their supplemental brief, they do not challenge the amount of the attorney's fees, but rather, they object to any award of attorney's fees to Norwest. They maintain that a trustee has a duty to administer a trust solely in the interest of the beneficiaries and that Norwest failed to do so here.

¶57 We disagree. As we already noted elsewhere in this Opinion it is a basic principle of trust law that a trust is to be managed to carry out the testator's intent. *Lindgren*, 268 Mont. at 100, 885 P.2d at 1282. And, as we held in the previous issue, Norwest did exactly that.

¶58 Furthermore, as we also noted in the previous issue, the threshold inquiry in any trust case is to examine the terms of the trust document. *George*, 253 Mont. at 344, 834 P.2d at

18

1380. In this case, paragraph (b)(4) of the will provides: "My trustee shall be reimbursed out of the trust estate for all reasonable expenses incurred in its management or protection, including attorney's fees and costs." In addition, § 72-33-631, MCA, provides that a trustee "is entitled to the repayment out of the trust property for . . . expenditures that were properly incurred in the administration of the trust; . . ."

¶59    Accordingly, we affirm the District Court's award of attorney's fees and expenses to Norwest for defending this action.

### Issue 3.

¶60    *Whether the District Court erred in failing to allow Norwest to recover all of its attorney's fees and expenses incurred in preparing the Twenty-Ninth Accounting.*

¶61    In its February 1, 2000 Findings of Fact, Conclusions of Law and Order, the District Court approved Norwest's Twenty-Ninth Accounting, including the trustee fees, but denied awarding Norwest its attorney's fees and expenses in preparing the Twenty-Ninth Accounting. Norwest subsequently filed a motion in the District Court seeking clarification of the court's order. On April 21, 2000, the District Court issued a Memorandum and Order denying Norwest's request to modify its previous order regarding attorney's fees and expenses for preparing the Twenty-Ninth Accounting.

¶62    Norwest now argues on appeal that the will, the provisions of the Montana trust statutes and prior decisions of this Court support Norwest's right to reimbursement for reasonable attorney's fees and expenses in preparing the Twenty-Ninth Accounting. The reason the District Court gave for denying the fees and expenses of presenting the Twenty-

19

Ninth Accounting was that the amount of the attorney's fees were unsubstantiated. Norwest argues that while that justifies withholding approval of those fees and expenses until such time as Norwest provides proper supporting evidence, it does not justify an outright denial of the fees and expenses. We agree.

¶63 Paragraph (b)(4) of the will directs that the trustee be reimbursed "out of the trust estate for all reasonable expenses incurred in its management or protection, including attorney's fees and costs." In addition, § 72-33-631, MCA, provides that a trustee is entitled to reimbursement from the trust for necessary expenses. And, finally, in *Dern*, this Court held that a trustee is entitled to recover its attorney's fees absent a showing of breach of the trustee's fiduciary duties. *Dern*, 279 Mont. at 154-56, 928 P.2d at 133-34. No such showing was made in this case.

¶64 Accordingly, we hold that the District Court erred in failing to allow Norwest to recover its attorney's fees and expenses incurred in preparing the Twenty-Ninth Accounting and we remand for further proceedings in the District Court to determine the amount of those attorney's fees and expenses.

## Issue 4.

¶65 *Whether Norwest is entitled to reimbursement from the trust for its attorney's fees and other expenses of this appeal.*

¶66 Norwest argues that it is also entitled to reimbursement from the trust for attorney's fees and expenses it incurred in responding to this appeal. In addition, Norwest requests direction on whether those fees and expenses should be charged equally to the principal and

20

income portions of the trust, or whether they should be charged entirely to income inasmuch as the income beneficiaries caused the fees and expenses to be incurred.

¶67    As we stated in our discussion under Issues 2 and 3 of this Opinion, paragraph (b)(4) of the will allows the trustee to be reimbursed out of the trust estate "for all reasonable expenses incurred in its management or protection." We conclude that responding to this appeal is a reasonable expense incurred in the management and protection of the trust. *See also* § 72-33-631, MCA; *Dern*, 279 Mont. at 154-56, 928 P.2d at 133-34.

¶68    Accordingly, we hold that Norwest is entitled to reimbursement from the trust for its attorney's fees and expenses on appeal and we remand to the District Court for a determination of the amount of those fees and expenses and for a determination of whether those fees and expenses should be charged equally to the principal and income portions of the trust.

¶69    We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

21

_____


_____


_____


_____
Justices

Justice Patricia O. Cotter, dissenting.

¶70     I dissent from the Court's conclusion that there is no justification for the removal of Norwest as trustee. The Court reached this conclusion pursuant to the provisions of § 72-33-618(2), MCA. I would reach the opposite conclusion, premised upon both § 72-33-618(2), MCA, and § 72-33-406, MCA.

¶71     As the Court points out, the income beneficiaries (Appellants) and five of the six residual beneficiaries joined in the petition to remove the trustee and appoint a new trustee. The Court further notes that the sixth residual beneficiary stated that she chose to "remain neutral." (Majority Opinion, at ¶ 14). In actuality, the sixth residual beneficiary, Leslie Barrett, indicated in a "To Who it May Concern" letter made part of the record, that she chose to remain neutral because ". . . I am not knowledgeable in the area of Trusts and I feel it should be left to the actual Beneficiaries as well as someone with an acute business acumen and experience to handle such issues." Thus, while Barrett expressed an interest in remaining neutral, her letter leaves the clear indication that she would defer to the actual beneficiaries (the appellants herein) as to the propriety of removing the trustee in favor of a successor trustee.

¶72     In its findings of fact and conclusions of law, the District Court referenced, but declined to apply, § 72-33-406, MCA, which allows for modification or termination of an irrevocable trust by all beneficiaries. That statute provides:

        (1) Except as provided in subsection (2), if all beneficiaries of an

23

irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court.

(2) If continuance of the trust is necessary to carry out a material purpose of the trust, the trust cannot be modified or terminated unless the court, in its discretion, determines that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust. . . .

Section 72-33-406, MCA. I believe sub-section (1) of this statute squarely applies here, and the District Court erred in refusing to apply it.

¶73 Section 72-33-618, MCA, which specifically addresses removal of a trustee, permits a trustee to be removed by the court on its own motion or on petition of a beneficiary. Moreover, the grounds for removal of a trustee under the statute are not statutorily limited. As § 72-33-618(2)(e), MCA, indicates, a trustee may be removed by the court for specified reasons or for "other good cause."

¶74 The District Court stated it would not apply § 72-33-406, MCA, in part because the instant action was not an action to modify or terminate the trust, but was rather a petition to remove the trustee, which is governed by § 72-33-618, MCA. I do not agree that the two statutes are mutually exclusive. Security Bank and Trust Company of Bozeman, Montana was named in the original trust agreement as trustee. Norwest is its duly authorized successor. Thus, if the trustee is to be changed, then the trust by necessity has to be modified. Appellants' petition therefore qualifies as both a petition to modify an irrevocable trust, pursuant to § 72-33-406, MCA, and a petition for removal of a trustee, pursuant to § 72-33-618, MCA.

24

¶75 Section 72-33-406(1), MCA, provides that beneficiaries, if they all agree that modification is necessary, may "compel modification" of the trust upon petition to the court. I would conclude that the virtually unanimous request of the beneficiaries (seven in favor and one abstaining but not objecting) to modify the trust should have been granted pursuant to § 72-33-406, MCA, and that this statutory basis for removal of the trustee constitutes "other good cause" under § 72-33-618(2)(e), MCA.

¶76 In deferring to the trustee as it has in its Opinion, over the express objection of the beneficiaries, I believe the majority has erroneously placed the interests of the trustee ahead of the interests of the beneficiaries. Rather than spending trust money to protect its position, the trustee should have granted the request of the beneficiaries that it resign. Such an approach would not have been a disservice to the trust. More to the point, it would have avoided the instant litigation and would have prevented the significant depletion of trust monies used to pay the trustee's fees and expenses. I would conclude that the trustee's adamant refusal to resign in the face of a virtually unanimous request that it do so, and its concomitant depletion of trust resources to defend its position, demonstrates that it was ultimately more interested in protecting its trustee's fees than in serving the beneficiaries of the trust. The trustee has an obligation to administer a trust "solely in the interest of the beneficiaries." Section 72-34-103(1), MCA. I agree with the beneficiaries that the trustee's conduct in this matter would support a finding that the trustee has breached this duty.

¶77 For the foregoing reasons, I would reverse the District Court's decision not to remove

25

Norwest as trustee. I dissent from our refusal to do so.

_____
Justice

Justice Terry N. Trieweiler dissenting.

¶78 I join in the dissent of Justice Cotter to the extent that it is based on § 72-33-618(2), MCA. I conclude, based on the following additional thoughts, that removal of, and substitution of, Norwest Investment Management and Trust as trustee of the Berthot Estate was appropriate under both subsection (a) for breach of the trust and subsection (e) for other good cause. I depart from that dissent to the extent that it would reverse the District Court on the basis of § 72-33-406, MCA.

¶79 I agree with the majority's conclusion that a trust must be managed to carry out the testator's intent. My problem with the majority Opinion is what I believe to be its premise as set forth in ¶ 47 where the majority states, "the purpose of the trust is not to provide income for the income beneficiaries, but rather, to preserve trust assets for later distribution to the residual beneficiaries." To believe that is to believe that Mildred I. Berthot, who executed this testamentary trust at the age of 73, in 1953 cared more about her unborn and unknown great grandchildren than she did her own daughter and living grandchildren. To make that assumption defies everything that I understand about human nature and relationships.

¶80 Mildred's will, which includes the trust, mentions only three beneficiaries, her daughter Bernice B. Klingensmith and her granddaughters, Ellen M. Collins and Joanne Barrett, who are the petitioners in this case. Collins was 11 years old when the trust was executed and had no children. Barrett was 24 and, based on the record, may or may not have recently given birth to her first child but no others. (The oldest child has joined in the

27

petition to replace the trustee.) It would have been unnatural for Mildred to be more concerned about the amount of the residual estate left to her yet unborn great grandchildren than the three descendants who were specifically mentioned as income beneficiaries of her trust and I would conclude that her primary reason for establishing the trust was to benefit her three named descendants. The original trustee would have known that. Mildred designated Security Bank and Trust of Bozeman as trustee. Her husband was a founder and the officers were friends of the family. It was not until after her death that Norwest was substituted as trustee.

¶81 The majority state in ¶ 51 that Mildred's exact intent is a matter of speculation. I agree and only speculated based on the corresponding effort to do so in the majority Opinion. However, I continue to believe that reliance on human nature will bring us closer to the truth than reliance on the legal fiction drawn from boilerplate language that this 73 year old grandmother of two intended the current consequences of the discretion she vested in her family bank.

¶82 As Justice Cotter mentions in her dissenting opinion, the trust simply has not been managed by Norwest for the benefit of Mildred's three named descendants. From the time of Bernice Klingensmith's death in 1994, the percentage of the trust value paid to Mildred's grandchildren has steadily declined and the fee paid to Norwest has steadily increased as the following table indicates:

28

| YEAR | MARKET VALUE | PERCENT OF MARKET VALUE DISTRIBUTED TO BENEFICIARIES | DISTRIBUTION TO EACH BENEFICIARY | NORWEST FEE [1] |
|------|--------------|-----------------------------------------------------|----------------------------------|-----------------|
| 1994 | $ 565,599.80 | 3.9% | $ 3,108.92 | $ 4,807.60 |
| 1995 | $ 717,893.22 | 3.7% | $13,334.67 | $ 6,102.10 |
| 1996 | $ 861,648.30 | 2.9% | $12,325.32 | $ 7,324.01 |
| 1997 | $1,096,306.23 | 2.1% | $11,662.74 | $ 9,318.60 |
| 1998 | $1,393,057.53 | 1.7% | $12,121.23 | $11,841.00 |

¶83　The fact is that Norwest now receives practically the same amount in fees as is distributed as income to each of Mildred's granddaughters. Furthermore, because Norwest collects half of its fee from the residual beneficiaries and half of its fee from the income beneficiaries, the income beneficiaries bear an increasingly disproportionate share of that expense. The trustee's fee in 1998 equals nearly 49% of the income distributed to the income beneficiaries compared to 22% of the income distributed in 1995. By comparison, the percentage of Norwest's fee paid by the residual beneficiaries in 1998 was the equivalent of .42%.

¶84　In 1998, while Mildred's grandchildren were receiving 1.7% of the trust's total value, Norwest was being paid a fee equal to 28% of the total dividend and interest income. If attorney and accounting fees are included, an amount equal to 31% of the total dividend and interest income was being paid to someone other than Mildred's intended income beneficiaries. By 1998, Norwest had achieved a financial position equal to Mildred's intended income beneficiaries.. The reason was that from 1994 until 1998, the amount of the trust invested in equities increased from 70% to 87%. By 1998, it was clear to both

---

[1] Based on Norwest's estimate, that fee is equivalent to 0.85% of trust value.

beneficiaries, and five out of six of their children, that the trust was being managed primarily for the benefit of Norwest and not for the benefit of Mildred's two grandchildren. The reason is clear. It was acknowledged during the District Court proceedings by Neil Severinson, Norwest's vice-president and trust officer, when he gave the following answers to the following questions:

> Q. Mr. Severinson, there's something that I've been wondering and perhaps you can clear it up for both me and the Court. Why if beneficiaries of this trust and five of the six residual beneficiaries of the trust have signed a petition saying they don't trust you and they don't want you, why don't you just resign?
>
> A. If the reason for asking that is because of the litany of alleged offenses, we don't believe we have done those things. We think we have had good performance.
>
> Q. The question is why are you fighting it whether it's true or not true? They don't trust your judgment. They don't trust your management. Why do you want to continue to be the trustee?
>
> A. That is what we do.
>
> . . . .
>
> Q. It's the fees, isn't it?
>
> A. That's why we are in the business; that's how we make our living.
>
> Q. Alright. Okay. So you lose this trust, you lose some fees?
>
> A. Sure.
>
> Q. Okay. And you realize, don't you, that the higher the market value of the trust, the greater fees you're going to generate?
>
> A. Yes.

¶85   I would conclude there was sufficient basis, pursuant to § 72-33-618(2)(a) or (e), MCA, to remove Norwest as trustee and that the District Court abused its discretion when it refused to do so. Therefore, I would reverse the judgment of the District Court refusing to do so and dissent from the majority Opinion.

_____
Justice

31

Justice Jim Rice specially concurring.

¶86    I concur with the Court's holding on all issues addressed herein.

¶87    I am persuaded that the trustee's management of the estate cannot be faulted under the terms of this trust document, particularly the provisions of paragraph (a)(7), which indicate that the trustee shall have the authority to:

> invest or reinvest such parts of the trust estate as may, from time to time, be in cash or converted into cash . . . as the trustee shall deem proper and for the best interests of the trust estate. *The trustee shall have as wide latitude in the selection and making of any investments, and all other powers and authorities with respect to the trust estate as if such trustee was the absolute owner thereof* . . . . [Emphasis added.]

Clearly, investment strategy and decisions were placed in the absolute discretion of the trustee under this provision. Given the growth of the trust estate under the trustee's management, the District Court's finding that "Norwest has met its duty to act with care, skill, prudence and diligence" is well supported, as is its conclusion that there is not good cause for removal of the trustee.

¶88    That does not mean, however, that the trustee, within the broad discretion granted to it by the trust, could not or should not have managed the trust to produce a higher level of income for the income beneficiaries. I do not concur with the Court's statement that "the purpose of the trust is not to provide income for the income beneficiaries, but rather, to preserve trust assets for later distribution to the residual beneficiaries." Taken to the extreme, this conclusion could authorize the trustee to eliminate all income-producing investments in favor of growth investments. In my view, the trustor intended to provide for both groups of

32

beneficiaries, and I am not persuaded that the language of the trust expresses a preference which favors one set of beneficiaries over the other, only that the trust gave the trustee wide latitude to make investment decisions in consideration of both groups.

¶89     For these reasons, I concur with the Court's holding.

_____
                                   Justice