DA 13-0576

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 100N

RICHARD KAVON, ARTHUR KAVON
and MICHAEL KAVON,

      Petitioners and Appellants,

   v.

HOWARD KAVON and FREDERICK
KAVON, Trustees,

      Respondents and Appellees.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
                     In and For the County of Sheridan, Cause No. DV-46-2011-51
                     Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Laura Christoffersen, Christoffersen & Knierim, P.C., Culbertson,
            Montana

      For Appellees:

            Loren J. O'Toole II, Brad W. Fjeldheim, O'Toole Law Firm,
            Plentywood, Montana

                         Submitted on Briefs:  March 26, 2014
                                   Decided:  April 15, 2014

Filed:

_____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Richard Kavon, Arthur Kavon, and Michael Kavon appeal from an order of the Fifteenth Judicial District Court, Sheridan County, denying their Petition for Removal of Trustees. We affirm.

¶3 This dispute arises from the estate plan of Paul Kavon, father of Richard, Arthur, and Michael, as well as Howard Kavon. Paul was a farmer in Sheridan County and was the principal shareholder in KCR Ranch, Inc., a family farm corporation. Paul placed his KCR Ranch stock into the Paul M. Kavon Trust. KCR Ranch has 3,000 shares of outstanding corporate stock: Richard owns 300 shares, Arthur owns 250 shares, and the Paul M. Kavon Trust owns the remaining 2,450 shares. KCR Ranch owns several thousand acres of crop land, farm buildings, and two houses located on the farm property. KCR Ranch's mineral interests were placed in the Kavon Mineral Trust (Mineral Trust).

¶4 The Paul M. Kavon Trust was an estate planning tool for Paul. It created the KCR Ranch Trust (Ranch Trust) effective upon Paul's death. All of the stock that Paul owned at the time of his death—i.e., 2,450 shares, or approximately 82 percent of KCR Ranch's corporate stock—was transferred into the Ranch Trust. The corporate stock is the only property owned by the Ranch Trust.

¶5     The beneficiaries of the Paul M. Kavon Trust and the Ranch Trust are Paul's four sons.  The beneficiaries are to share equally in the corporation considering first any individually owned shares.  Paragraph 10(a) of the Paul M. Kavon Trust outlines the process for distribution:

> The Trustees shall first determine and allocate Beneficial Interests to each beneficiary on the books of the Trustee.  The initial allocation shall be made by first determining the shares of stock owned outside of the trust by each son, including the transferees of each son, and then allocating as many shares in the trust as may be necessary so that for each son and his successors in interest, the total of the shares owned outside the trust plus the shares allocated in the trust shall be identical for all of my sons and their successors.  All additional shares shall be allocated equally to my four sons.

¶6     The terms of the trust documents state that Howard and Paul's nephew, Frederick Kavon (Fred), are appointed as cotrustees.  Additionally, the corporate stock is to remain in the Ranch Trust until the Ranch Trust terminates 21 years after Paul's death.  The trust documents further state that "none of my other sons [i.e., Richard, Arthur, and Michael], or their descendants, or their spouses, shall ever serve as trustee or co-trustee."

¶7     The Mineral Trust was also created on Paul's death and contains only the mineral interests of the farm property.  The Mineral Trust has similar terms as the Paul M. Kavon Trust in that there is a prohibition on disposing of the trust property and both Howard and Fred are cotrustees, to the exclusion of Richard, Arthur, and Michael.  The Mineral Trust also provides that the trustees may, in their discretion, withhold up to 30 percent of the net income to provide operating capital or to produce overall income tax savings.

¶8     Richard, Arthur, and Michael alleged in the District Court that Howard and Fred, as cotrustees, breached their fiduciary obligations to the trust beneficiaries and should be

3

removed. They specifically asserted that Howard took a position adverse to the beneficiaries by simultaneously serving as trustee and as president, director, and sole employee of KCR Ranch. They maintained that this resulted in a conflict of interest, self-dealing, and a lack of sufficient corporate or internal controls to protect the beneficiaries' interests. Richard, Arthur, and Michael also asserted that Howard's fees for administering the trusts were excessive, that he did not maintain adequate accounting records, that he failed to secure a favorable mineral lease for the properties, and that he allowed a house tenant to pay below market rent and to become delinquent by $2,075. They further alleged that Fred breached his fiduciary duty by failing to take reasonable steps to address the actions of his cotrustee, Howard.

¶9 A bench trial was held in May 2013. The parties presented testimony, documentary evidence, arguments, and post-trial briefing. On August 7, 2013, the District Court entered an order denying the Petition for Removal of Trustees, finding there had been no breach of the trustees' duties, that the trust property had been managed properly, and that there was not good cause for removal.

¶10 On appeal, Richard, Arthur, and Michael argue that the District Court abused its discretion in failing to remove Howard and Fred as trustees and in failing to consider the conflicts of Howard's several positions. They also maintain that the trustees did not provide adequate accountings. Howard and Fred respond that they followed Paul's instructions and did not exceed their authority as set forth in the trust documents. Howard and Fred maintain that Richard, Arthur, and Michael have failed to produce sufficient evidence to meet the standard for removal.

4

¶11    A district court's denial of a request to remove a trustee is reviewed for abuse of discretion. *In re Baird*, 2009 MT 81, ¶ 11, 349 Mont. 501, 204 P.3d 703.  A trial court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *In re Estate of Hannum*, 2012 MT 171, ¶ 18, 366 Mont. 1, 285 P.3d 463.  The abuse-of-discretion standard is deferential to the trial court. *State v. McOmber*, 2007 MT 340, ¶ 10, 340 Mont. 262, 173 P.3d 690.

¶12    The District Court found that Paul's selection of the trustees provided "a common sense conservative direction for the trusts['] long term benefit and stability."  The court further observed that "Fred has kept the entities['] business interests operating conservatively for the long term benefit of the beneficiaries.  As an example, instead of chasing short term oil dollars for a tenant for the spare house on the farm property, Fred looked for a long term tenant who would maintain and improve the property."  The court observed that Howard is a certified public accountant who "has carefully maintained records on all aspects of the businesses."  Based on Howard's professional skills and their value to the corporation, the court concluded that the negotiated salary and benefits package was reasonable.  The court also concluded that the accountings provided by Howard were complicated due to the varied stock ownership of the trust and other shareholders of KCR Ranch, and that "the unusual provisions of the trusts regarding equal distributions" had been correctly interpreted and accurately implemented.

¶13    "[I]t is a basic principle of trust law that a trust is to be managed to carry out the testator's intent.  Therefore, the threshold inquiry in any trust case is to examine the terms

of the trust document." *Collins v. Norwest Inv. Mgt. & Trust*, 2002 MT 277, ¶ 35, 312 Mont. 366, 59 P.3d 1080 (citations omitted). A trustee may be removed in accordance with the trust instrument, by the court on its own motion, or on petition of a cotrustee or beneficiary. Section 72-33-618(1), MCA (2011). The grounds for removal of a trustee by the court include the following:

> (a) if the trustee has committed a breach of the trust;
> (b) if the trustee is insolvent or otherwise unfit to administer the trust;
> (c) if hostility or lack of cooperation among cotrustees impairs the administration of the trust;
> (d) if the trustee fails or declines to act; or
> (e) for other good cause.

Section 72-33-618(2), MCA (2011).

¶14 We conclude, based on a review of the record, that cotrustees Howard and Fred followed Paul's instructions and did not exceed their authority as provided in the trust documents. We further conclude that Richard, Arthur, and Michael have not produced sufficient evidence establishing grounds for removal of the trustees. Section 72-33-618, MCA (2011). For the District Court's order to be reversed, the beneficiaries must show that the District Court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason, resulting in substantial injustice. The evidence does not support such a conclusion. Rather, the evidence demonstrates that at the heart of this matter is a family farm passed down to children who do not agree with decisions made by a parent as to the management, control, and distribution of farm assets. The record demonstrates that the trust property was productive, with respect to both a mineral lease negotiated by the trustees and the farm lease, and that accountings were accurately

compiled. Moreover, Richard, Arthur, and Michael's allegation that Howard and Fred have an affirmative obligation, under § 72-38-802(7), MCA (2013), to elect or appoint directors or other managers who would manage the corporation in the best interests of the beneficiaries is contrary to the terms of the trust documents themselves which specifically authorize the arrangement that has been effectuated by the cotrustees.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are ones of judicial discretion. The District Court did not abuse its discretion in denying the Petition for Removal of Trustees.

¶16 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT